UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ERIC MCDAVID,

        Plaintiff,

  v.

THE COUNTY OF SACRAMENTO, LOU BLANAS, Sheriff of Sacramento County, an individual, UNITED STATES MARSHALS SERVICE, ANTHONY AMADOR, United States Marshal of the Eastern District of California, an individual, and DOES 1 through 50,

        Defendants.

No. 2:06-cv-0638-MCE-GGH

MEMORANDUM AND ORDER

----oo0oo----

Plaintiff Eric McDavid is being held in the Sacramento County Jail on federal charges and, through the present lawsuit, has sued various individuals and entities allegedly involved in the terms and conditions of that confinement. Plaintiff alleges that Defendants violated his First and Eighth Amendment rights under 48 U.S.C. § 1983 by, inter alia, refusing to accommodate his request for strictly vegan meals.

///

Plaintiff also alleges that Defendants' refusal to provide vegan meals violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA").

Defendants County of Sacramento and Lou Blanas now move to dismiss the above allegations for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Lou Blanas also asserts a defense of qualified immunity even if the aforestated allegations could otherwise be maintained against the County.

For reasons set forth below, Defendants' Motion to Dismiss will be granted.[1]

**BACKGROUND**

Plaintiff Eric McDavid was arrested on January 13, 2006, and placed under the custody of the United States Marshals Service. He is currently being held in the Sacramento County Jail. On January 25, 2006, McDavid was indicted in federal court on one count of conspiracy. McDavid's bail request was denied.

According to McDavid, both he and his attorneys have told prison officials that because McDavid is a vegan he will not eat any food made with animal products, which include meat, dairy and any other products which are derived from animals or which are tested on animals. McDavid claims to have been a vegan for three years.

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

2

He asserts that his veganism is a deeply sincere moral belief, "held with the strength of a traditional religious conviction." Because of this belief, McDavid asked jail officials to serve him a strictly vegan diet.

McDavid alleges that the jail refused to accommodate his request and continued to bring him its standard meals. He claims to have become very ill as a result of that refusal, and asserts that he is not provided enough fruit, protein and vitamins to remain healthy given his veganism. After sending a series of letters and grievance complaints to jail and law enforcement officials, McDavid brought the current action on March 24, 2006.

Plaintiff McDavid contends that he has a constitutional right to a vegan diet based on the Free Exercise Clause of the First Amendment and on RLUIPA. He also argues that Defendants' refusal to provide a vegan diet and their imposition of non-vegan food on Plaintiff was "cruel and unusual punishment" under the Eighth Amendment.[2]

Defendants counter that Plaintiff's First Amendment claims are invalid as a matter of law because veganism is not a "religion" for purposes of the First Amendment and RLUIPA. Defendants also contend that refusal to serve a vegan diet cannot be cruel and unusual punishment under the Eighth Amendment. Finally, Defendant Lou Blanas asserts that he is protected by qualified immunity.

///

---

[2] In his Complaint, McDavid raises an Eighth Amendment claim based on the jail's failure to give him adequate opportunities to exercise. Defendants do not address this claim in their Motion to Dismiss.

3

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint will not be dismissed for failure to state a claim "'unless it appears beyond doubt that plaintiff can prove no set of facts in support of [his or] her claim that would entitle [him or] her to relief.'" *Yamaguchi v. Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997) (quoting *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996)).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The Court should "freely give[]" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment. . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992).

///
///
///
///
///

**ANALYSIS**

For purposes of this motion, Plaintiff's First Amendment and RLUIPA claims both hinge on the same issue: whether Plaintiff's veganism is a religious belief protected on constitutional or statutory grounds.

**1.  Plaintiff's RLUIPA Claim**

RLUIPA prohibits the government from imposing a "substantial burden" on the "religious exercise" of a prisoner.  42 U.S.C. § 2000cc-1 (2000).  It defines "religious exercise" as "*any exercise of religion, whether or not compelled by, or central to, a system of religious belief.*"  § 2000cc-5 (emphasis added). Though broadly protecting the *exercise* of religion, RLUIPA does not define what "religion" is.  In addition, since Congress enacted RLUIPA in 2000, neither the Supreme Court nor the Ninth Circuit has defined "religion" within the specific statutory context.  *See, e.g., Cutter v. Wilkinson*, 544 U.S. 709 (2005)(upholding the constitutionality of RLUIPA without addressing what constitutes "religion").

Thus, no RLUIPA precedent bears on the issue of whether Plaintiff's veganism is a religion.  However, courts have defined religion for purposes of the Free Exercise Clause of the First Amendment.  It is therefore appropriate for the Court to combine Plaintiff's RLUIPA and Free Exercise claims in addressing whether Plaintiff's veganism is a religion.

///
///

**2.  Plaintiff's First Amendment Claims**

The First Amendment prohibits Congressional interference with the free exercise of religion. U.S. Const. amend. I. A religious claim under the Free Exercise Clause must satisfy two criteria. *See Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981). First, the religious belief must be sincere; the Free Exercise Clause does not cover beliefs which are "obviously shams and absurdities and whose members are patently devoid of religious sincerity." *Id.* (quoting *Theriault v. Carlson*, 495 F.2d 390, 395 (5th Cir. 1974)). In the instant case, given the allegations of Plaintiff's Complaint and construing all facts in his favor, the Court cannot say that Plaintiff McDavid lacks the requisite sincerity with respect to his professed veganism.

The sincerity of Plaintiff's subjective beliefs does not, however, end the analysis. Plaintiff must also show, as a second prerequisite for maintaining a viable Free Exercise claim, that his professed concerns are "rooted in religious belief," not in "purely secular" philosophical concerns. *Callahan*, 658 F.2d at 683 (quoting *Wis. v. Yoder*, 406 U.S. 205 (1972)). All courts recognize some distinction between a religious belief and a non-religious lifestyle decision; courts will protect the former, but not the latter, from government interference under the Free Exercise Clause. While courts have differed on how broadly to interpret "religious belief," there is no precedent under which Plaintiff's veganism can be considered a religion protected by the First Amendment.

///

///

6

1 In his reply, Plaintiff urges the Court to adopt the widest possible definition of "religious belief" from several Vietnam-era cases dealing with conscientious objectors: *United States v. Seeger*, 380 U.S. 163 (1965), and *Welsh v. United States*, 398 U.S. 333 (1970). At issue in *Seeger* was § 6(j) of the Universal Military Training and Service Act, as amended 50 App. U.S.C. § 456(j), providing religious conscientious objectors exemption from military service. The *Seeger* court found that "religious belief" included not only belief in a "Supreme Being" but also beliefs "parallel to that filled by the orthodox belief in God." *Seeger*, 380 U.S. at 165-66. Similarly, the *Welsh* court held that Welsh's beliefs were "religious" within the statutory context because they were "held with the strength of more traditional religious convictions." *Welsh*, 398 U.S. at 339.

*Seeger* and *Welsh* are inapposite to this case. Both deal with a narrow question of statutory construction, not constitutional interpretation. The *Seeger* court explicitly stated that "in [defining the phrases "religious training and belief" and "Supreme Being"] we *resolve it solely in relation to the language of § 6(j) and not otherwise*." *Seeger*, 380 U.S. at 174 (emphasis added); *see also Welsh*, 398 U.S. at 343-44. In addition, *Seeger* and *Welsh* are factually distinguishable from Plaintiff's situation. The court in both cases held that the government could not compel Seeger and Welsh to participate in a war they opposed on religious grounds. By contrast, Plaintiff argues that the government has restricted the exercise of his "religion" by not providing him with special meals.

///

7

1  Any comparison is inapt.[3]

2  Even if *Seeger* and *Welsh* were on point, two years after *Welsh* the Supreme Court narrowed the definition of "religion" for Free Exercise purposes in *Wisconsin v. Yoder*, 406 U.S. 205 (1972). In *Yoder*, the court held that Wisconsin's compulsory education system infringed on the Free Exercise rights of Amish parents who, for religious reasons, removed their children from public schools before they reached age 16. *Id.* The court made a clear distinction between the Amish religious faith and the Amish way of life. *Id.* The Free Exercise Clause would protect the parents' decision only if they based it on religious belief:

> A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations; to have the protection of the Religious Clauses, the claims must be rooted in religious belief . . . thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clauses.

///

---

[3] In *United States v. Ward*, 989 F.2d 1015 (9th Cir. 1993), the Ninth Circuit adopted language from *Seeger* and *Welsh,* holding that a defendant was entitled to use an alternative form of the standard trial oath. The *Ward* court's analysis of *Seeger* and *Welsh* is inapplicable to Plaintiff's claim for the same reasons that *Seeger* and *Welsh* are not relevant, as detailed above. *Ward* is also distinguishable from the current inquiry because the oath formula does not require any invocation of religion or religious belief. Instead, "all that the common law requires is a form or statement which impresses upon the mind and conscience of a witness the necessity for telling the truth." *Id.* at 1019. This flexible standard was designed to accommodate almost anyone who might appear before the court; it does not provide guidance on the narrower question of what is "religion" for Free Exercise purposes.

*Id.* at 215-16. The court then found that the Amish parents' actions were rooted in a religious belief, thereby receiving First Amendment protection. *Id.* While the court did not define what "religion" was under the Free Exercise Clause, its rejection of "purely secular" and "philosophical and personal" beliefs in the constitutional context signaled a withdrawal from the open-ended language of *Seeger* and *Ward*.

The Ninth Circuit explicitly utilized this distinction between "religious" beliefs and "purely secular," philosophical beliefs in *Callahan v. Woods*, 658 F.2d 679 (9th Cir. 1981). However, because the religion in question in that case was a conventional one (Christianity), the *Callahan* court, like the Supreme Court in *Yoder*, did not attempt to define the outer bounds of "religion" in the Free Exercise context. *Id.* at 685.

Eventually, though, in *Alvarado v. City of San Jose*, 94 F.3d 1223 (9th Cir. 1996), the Ninth Circuit adopted a clear definition of "religion" for purposes of the First Amendment. In *Alvarado*, the city of San Jose commissioned a sculpture depicting Quetzalcoatl, the "Plumed Serpent" of Aztec mythology. *Id.* at 1225. The plaintiffs brought an action, alleging that the city violated the First Amendment's Establishment Clause by setting up a "religious" object. *Id.* The court found that the sculpture was not "religious" under the Establishment Clause. *Id.*

Although *Alvarado* was an Establishment Clause case, the court approvingly applied the Third Circuit's Free Exercise test from *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981), to determine if worship of Quetzalcoatl was a "religion." *Alvarado*, 94 F.3d at 1229.

9

In *Africa*, a prisoner claimed that it would violate the tenets of his religious group--a "revolutionary" organization that was "absolutely opposed to all that is wrong"-- to eat anything other than raw foods. *Afr.*, 662 F.2d at 1026. The *Africa* court departed from its own Circuit's earlier interpretations of "religion," derived in part from the broad language of *Seeger* and *Welsh* as discussed above. *Id.* at 1228-1229. It replaced them with a new test utilizing certain "indicia" to determine if a belief was "religious" in nature. *Id.* The Third Circuit formulated its test as follows:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs [including "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observance of holidays and other similar manifestations associated with the traditional religions"].

*Afr.*, 662 F.2d at 1032. After evaluating the prisoner's Free Exercise claim against these indicia, the *Africa* court found that the prisoner's dietary requirement was not a "religious belief" warranting First Amendment protection.

Applying this test to the plaintiff's claim, the *Alvarado* court found that Quetzalcoatl worship was not a religion for First Amendment purposes. *Alvarado*, 94 F.3d at 1229. While recognizing the difference between a Free Exercise and an Establishment Clause analysis, the court deemed it immaterial in defining what "religion" was. *Id.* at 1230. In this way, the Ninth Circuit adopted the *Africa* test, which has also become the standard in other federal circuits.

10

1 *See, e.g., Friedman v. S. Cal. Permanente Med. Group*, 102 Cal.
2 App. 4th 39, 60 (Ct. App. 2002) (discussing the influence of the
3 *Africa* test).

4     Because of its incorporation in *Alvarado*, the *Africa* test is
5 the controlling standard for Plaintiff's claim.  Under the *Africa*
6 test, Plaintiff's veganism, standing alone, cannot be a religion.
7 It does not address "fundamental and ultimate questions;" it has
8 no formal and external signs.  Plaintiff does not allege the
9 existence of any larger body of adherents to which he belongs.
10 Instead, he describes his veganism as a "right and appropriate
11 way to live."  Complaint ¶ 24.  Like the prisoner in *Africa*,
12 Plaintiff's dietary regimen is a purely secular lifestyle choice,
13 not protected by the Free Exercise Clause.

14     Therefore, although the Court cannot say that Plaintiff
15 lacks the requisite sincerity in his veganism, Plaintiff's
16 veganism cannot be a "religion" for purposes of the Free Exercise
17 Clause and RLUIPA.  Defendants' Motion to Dismiss is therefore
18 proper as to these claims.

19 **3.  Plaintiff's Eighth Amendment Claims**

20     The Eighth Amendment prohibits the infliction of cruel and
21 unusual punishment.  U.S. Const. amend. XIII.  When challenging
22 the conditions of confinement, a prisoner must first demonstrate
23 that the treatment was "sufficiently serious" to be an Eighth
24 Amendment violation.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).
25 This is an objective standard.  *Id.*  If a prisoner is successful
26 in demonstrating this first element, he must then show that the
27 official in question acted "with a sufficiently culpable state of
28 mind."  *Id.*

11

1    Deprivation of food is a violation of the Eighth Amendment.
2 *See Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  When
3 the institution provides food, it must be "adequate to maintain
4 health."  *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).
5    Plaintiff's Complaint establishes that the jail provided
6 sufficient food that was adequate to maintain health.  While
7 Plaintiff states that the jail has not provided him vegan meals,
8 he notes that "animal products [have] *constantly* [been] imposed
9 upon him with every [meal]."  Complaint ¶ 27 (emphasis added).
10 Plaintiff also declares that the jail "continuously provide[s]
11 dead animal products . . . several times a day . . ."  Complaint
12 ¶ 38.  Plaintiff has not alleged, however, that the jail fails to
13 provide food of adequate quantity and quality to maintain the
14 health of its general population.  Under the objective standard
15 found in *Wilson*, Defendants' failure to provide specific foods to
16 one prisoner cannot be "sufficiently serious" to be an Eighth
17 Amendment violation.

18    The imposition of "dead animal products" on a vegan prisoner
19 also is not serious enough to constitute cruel and unusual
20 punishment under the Eighth Amendment.  The jail "provides" the
21 food; it does not force Plaintiff to eat it.  Complaint ¶ 27.
22 "Animal products" include milk and meat, and are legitimate
23 sources of food.  Under an objective standard, no cognizable
24 legal claim exists for Plaintiff's idiosyncratic fear of normal
25 food.
26 ///
27 ///
28 ///

12

**CONCLUSION**

For the forgoing reasons, Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted is GRANTED as to Plaintiff's First Amendment and RLUIPA claims (First and Second Causes of Action), as well as to Plaintiff's Eighth Amendment claim regarding his vegan diet (as set forth in the Third Cause of Action).[4]  No leave to amend will be permitted inasmuch as the Court does not believe that further amendment can cure the deficiencies of Plaintiff's Complaint as to these claims.

IT IS SO ORDERED.

DATED: June 26, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court finds that Plaintiff has failed to state any cognizable claim concerning his vegan diet under either the First or Eighth Amendment, it is not necessary to determine whether Defendant Blanas would have been entitled to qualified immunity had those claims been otherwise viable.

13